REID and BEAM v. SOUTHERN RAILWAY COMPANY.

(Filed 16 December, 1908).

1. **Carriers of Goods—Penalty Statutes—Regular Stations—Refusal to Accept Shipment.**

A refusal by the carrier's agent to receive, at its depot, freight, and transportation charges therefor, destined for a point on the carrier's road which was only a siding, and was not a regular station, is wrongful, and subjects the carrier to the penalty prescribed by Revisal, sec. 2631, when the refusal is on the ground that the agent did not know where the given destination was, and it appears that he could have ascertained that freight was ordinarily shipped there on way bills made out to a regular station on the carrier's road some two miles distant therefrom.

2. **Same—Evidence.**

When a shipment of freight and transportation charges are refused by carrier's agent because he did not know where its given destination was, and it appears that the name given was very slightly changed from that appearing on the "Official Railway Guide and Shipping Guide" used by the carrier; the fact that another agent, who afterwards took the place of the first, promptly learned the location of the destination and the rate, and gave bill of lading and made shipment, is evidence that the rate and destination could have been ascertained by the first from the information given him, in an action for the penalty prescribed by Revisal, sec. 2631.

3. **Carriers of Goods—Penalty Statutes—Refusal to Accept Shipment—Commerce Clause—Constitutional Law.**

The penalty arising under Revisal, sec. 2631, from the wrongful refusal of carrier's agent to accept an interstate shipment of freight, bears no relation to the Commerce Clause of the Federal Constitution, for the penalty accrues before the freight is accepted for transportation.

4. **Carriers of Goods—Penalty Statutes—Refusal to Accept Shipment—"Party Aggrieved."**

The shipper of the goods is the "party aggrieved," and is the one entitled to sue for the penalty prescribed in Revisal, sec. 2631, which arises from the wrongful refusal of the carrier's agent to accept them for transportation.

ACTION tried before *Ward, J.,* and a jury, April Term, 1908, of RUTHERFORD. Plaintiff appealed.

*Edwards & Elliott* for plaintiffs.
*W. B. Rodman* and *Gallert & Carson* for defendant.

CLARK, C. J. Action for penalty under Revisal, sec. 2631, for refusal to "receive for transportation" a carload of shingles tendered to defendant's agent at Rutherfordton, 2 July, 1906, for shipment to consignee at Scottsville, Tenn. The plaintiff testified that he tendered prepayment of freight, and repeatedly, on many succeeding days, asked that the car be shipped, and offered to prepay freight. The agent refused to ship because he said he did not know where Scottsville was, nor the rate. The plaintiff told the agent that Scottsville was near Knoxville, which is a station on defendant's road. On 17 July, a new agent came to Rutherfordton, he had a talk with plaintiff about the carload of shingles, and on 18 July, wired an inquiry to the division freight agent, who the same day wired back the rate, and the car was sent forward on 19 July. It appeared by testimony of defendant's witnesses that Scottville, instead of Scottsville, is the name of the station, that it is a siding a few miles from Knoxville on a branch road operated by the defendant, that it is not a regular station, but freight is usually shipped there on way-bills made out to a regular station two miles away. On 19 July, the defendant shipped the car on a way-bill to "Scottsville, Tenn.," the freight being prepaid. The name "Scottsville, Tenn.," does not appear in the "Official Railway Guide," nor in the "Shipping Guide" used by railroad companies.

The fact that on 18 July, the new agent promptly learned where Scottville, Tenn., was, and the rate, and gave a bill of lading and shipped the carload the next day, is evidence that the rate and destination could have been ascertained by the other agent on 2 July.

The defendant contends, however, that Revisal, sec. 2631, giving a penalty for refusing to accept freight for shipment is unconstitutional when the freight is to be shipped into another State. But "refusing to receive for shipment" is

an act done wholly within this State. It is not part of the
act of transportation, and our penalty statute applies. This
was held by Avery, J., in *Bagg v. R. R.*, 109 N. C., 279,
where the railroad company received the freight for shipment
to a point in another State, but negligently detained it for
five days before shipping. The precise point herein was
raised in *Currie v. R. R.*, 135 N. C., 536, and it was held
that this section, giving a penalty for failing and refusing
to accept for shipment a carload of lumber, was not unconsti-
tutional·as an interference with interstate commerce, when the
lumber was offered for shipment to a point in another State.
Both these cases were cited and reaffirmed by *Walker, J.*, in
*Walker v. R. R.*, 137 N. C., at p. 168.

In *Twitty v. R. R.*, 141 N. C., 355, it was held, *Brown, J.*,
that where the agent held the freight in storage, but refused
to give a bill of lading because he did not know the freight
rates, this was "a refusal to receive for transportation, and
the railroad company is liable to a penalty under Revisal,
2631." The Court said, "The fact that the agent did not
know the freight rates is no excuse. It is his duty to know
them. At least, he could readily have telegraphed and ascer-
tained, and need not have refused to give a bill of lading on
that account."

In *Harrill v. R. R.*, 144 N. C., 532, *Walker, J.*, it was
held, that Revisal, sec. 2633, imposing a penalty for failure
to deliver freight was valid, though the freight was inter-
·state. There the penalty was incurred after the transporta-
tion had ceased. Here the penalty accrued before the trans-
portation had begun, and before the freight was even received
and accepted for transportation.

The owner of the shingles is the proper party plaintiff.
There was no consignee till after the bill of lading was given.
That the State Court has authority in such cases is now well
settled. Cooke, Commerce Clause, 233, citing *R. R. v. Jacob-
son,* 179 U. S., 287, and many other cases.

The fact that Scottville was not a regular station at which was kept an agent is no valid excuse for not receiving the shingles.   When goods are shipped to a place where there is a side-track, but no depot platform or agent of the carrier, and this is known to the parties, it has been held that leaving the car of goods upon the side-track is a good delivery, and relieves the company from further responsibility.    4 Elliott Railroads, sec. 1521.  That a depot was or was not maintained at Scottville in no way affected the right of the plaintiffs to have their goods received at Rutherfordton when tendered. *Narville v. R. R.,* 67 L. R. A., 271; *Alexander v. R. R.,* 144 N. C., 93.

The judgment of nonsuit is

Reversed.

BROWN, J., concurring:  I concur in sending this case back for trial in order that the facts may be found.   I reserve the right to determine for myself whether the penalty, in case one should be imposed, is a burden upon interstate commerce, in case the cause shall come back upon a final judgment against the defendant.

As I read the record the defendant would be liable, if at all, for only fifty dollars, the penalty imposed for one day only, as there is proof of only one distinct tender and refusal. That matter, however, will be made clearer on another trial.

As the plaintiffs admit that they lost nothing by the delay in shipping the shingles, if they are permitted to recover seven hundred and fifty dollars as penalties under the statute, I should be inclined to hold that such an excessive impost could not be sustained, under the decisions of the Supreme Court of the United States in *Houston & T. C. R. R. v. Mays,* 201 U. S., 321, and *McNeil v. R. R.,* 202 U. S., 542.